UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| DAVID LOPEZ, : | |
|    Plaintiff, : | |
| : | |
| v. : | |
| : | Case No. 3:20cv817 (MPS) |
| : | |
| ALLISON BLACK, WARDEN, : | |
|    et al, : | |
|    Defendants. : | |

**<u>INITIAL REVIEW ORDER</u>**

     The plaintiff, David Lopez, who first filed this action as an unsentenced inmate formerly within the custody of the Connecticut Department of Correction ("DOC") at the New Haven Correctional Center ("NHCC"), is proceeding *pro se* and *in forma pauperis* pursuant to 42 U.S.C. § 1983 against NHCC Warden Allison Black, Deputy Warden Jeanette Maldonado, and Deputy Warden Denise Walker. Compl., (ECF No. 1); Order, (ECF No. 9); Am. Compl. (ECF No. 12).[1] Lopez's amended complaint alleges that the defendants subjected him to unsanitary conditions of confinement and seeks damages and declaratory and injunctive relief against the defendants in their official and individual capacities.[2] Am. Compl., (ECF No. 12).

---

[1] The Court previously instructed Lopez to file an amended complaint that complied with Federal Rule of Civil Procedure 8 by including a request for relief. Order (ECF No. 9).

[2] The court will not address the plausibility of Lopez's claim under Connecticut law for negligence because this initial review for purposes of 28 U.S.C. § 1915A is limited to federal law claims. The state law claim may be addressed later by the defendants in a motion to dismiss or a motion for summary judgment.

1

For the reasons that follow, the Court will permit Lopez's Fourteenth Amendment claims to proceed beyond initial review against Warden Black, Deputy Warden Madonado, and Deputy Warden Denise Walker.

I. **Legal Standard**

Pursuant to 28 U.S.C. § 1915A, the court must review a prisoner's civil complaint against a governmental entity or governmental actors and "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint—(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." If the prisoner is proceeding *pro se*, the allegations of the complaint must be read liberally to raise the strongest arguments that they suggest. *See Tracy v. Freshwater*, 623 F.3d 90, 101-102 (2d Cir. 2010).

The Supreme Court has set forth a threshold "plausibility" pleading standard for courts to evaluate the adequacy of allegations in federal court complaints. A complaint must allege enough facts—as distinct from legal conclusions—that give rise to plausible grounds for relief. *See, e.g., Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Notwithstanding the rule of liberal interpretation of a pro se complaint, a pro se complaint may not survive dismissal if its factual allegations do not meet the basic plausibility standard. *See, e.g., Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 387 (2d Cir. 2015).

II. **FACTS**

On September 16 2019, while housed at NHCC, Lopez tried to speak with correctional officers after he had experienced mice running all over his feet while he was in his cell. Am. Compl. (ECF No. 12 at ¶ 1). The officers responded by mocking him and telling him not to come to jail if he did not want to be subjected to these conditions. *Id.*

On September 18, 2019, during a facility lock down, Lopez and the other inmates had to eat in their cells next to toilets and dirty vents. *Id.* at ¶ 2. Lopez noticed another mouse in his cell, which made Lopez drop his food. *Id.* Although Lopez spoke to the Block Officer and the Lieutenant, no remedial efforts were made and no materials were provided to clean the cell. *Id.*

On September 22, 2019, Lopez was moved to another unit in NHCC, where he was constantly waking and finding mice in his cell. *Id.* at ¶ 3.

Lopez was later moved to another unit, HL-3, where he has had to create his own barricade to prevent the mice from entering his cell. *Id.* at ¶ 4. However, the barricades were considered contraband and so the officers removed them. *Id.* On October 15, 2019, Lopez woke up due to a crunching noise under the bunk. *Id.* After Lopez and his cellmate saw two mice dart toward the door, his cellmate killed one mouse. *Id.* They showed the dead mouse to correctional staff, who told them to flush it. *Id.*

Lopez filed requests with correctional staff including Warden Black, and Deputy Wardens Madonado and Walker, who provided no relief. *Id.* at ¶ 5. Lopez filed a grievance but he never received a response to his grievance. *Id.* He also spoke to Warden Black and her staff (during tours) about the mice, dirty vents, mold on the windows, rust on the desk and bunks, and feces coming from other toilets. *Id.* However, no remedial measures were taken. *Id.*

Lopez alleges that exposure to these conditions and poor air quality have made him sick and harmed his lungs. *Id.*

**III.     DISCUSSION**

Because Lopez's claims concern his conditions as a detainee, his claims are governed by the Fourteenth Amendment's Due Process Clause. *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017); *Gilliam v. Black*, No. 3:18cv1740 (SRU), 2019 WL 3716545, at *7 (D. Conn. Aug. 7,

3

2019) (construing conditions of confinement claim of unsentenced plaintiff under the Fourteenth rather than Eighth Amendment.).

    **A.**    **Fourteenth Amendment**

To establish a constitutional violation under the Eighth or Fourteenth Amendment based upon inhumane conditions, the plaintiff must demonstrate that the deprivation was "sufficiently serious." *Rogers v. Faucher*, No. 3:18-CV-1809 (JCH), 2019 WL 1083690, at *4 (D. Conn. Mar. 7, 2019) (quoting *Darnell v. Pineiro*, 849 F.3d 17, 30 (2d Cir. 2017)). Prison officials cannot "deprive inmates of their 'basic human needs—e.g., food, clothing, shelter, medical care, and reasonable safety'" or expose prisoners to conditions that may pose an unreasonable risk of serious damage to their current or future health. *Alster v. Goord*, 745 F. Supp. 2d 317, 335 (S.D.N.Y. 2010) (quoting *Helling v. McKinney*, 509 U.S. 25, 32 (1993)). To meet the objective element of a claim for deliberate indifference to his health or safety, the inmate must allege that he was incarcerated under a condition or a combination of conditions that resulted in a "sufficiently serious" deprivation of a basic life necessity or "a substantial risk of serious harm" to his health. *Farmer v Brennan*, 511 U.S. 825, 834 (1994).

Under the Fourteenth Amendment, the detainee must also allege facts showing that "the defendant-official acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known that the condition posed an excessive risk to health or safety." *Rogers*, 2019 WL 1083690, at *4 (quoting *Darnell*, 849 F.3d at 35).

<u>Unsanitary Conditions of Confinement</u>

Inmates have a right to sanitary living conditions and the necessary materials to maintain adequate personal hygiene. *See Walker v. Schult,* 717 F.3d 119, 127 (2d Cir. 2013) (citing cases

4

for the proposition that "the failure to provide prisoners with toiletries and other hygienic materials may rise to the level of a constitutional violation.") Unsanitary conditions have satisfied the objective element where "the area in front of a prisoner's cell is filled with human feces, urine, and sewage water, … a prisoner's cell is fetid and reeking from the stench of the bodily waste from the previous occupants, … a prisoner's cell floor has urine and feces splattered on the floor." *McFadden v. Noeth*, 827 F. App'x 20, 29 (2d Cir. 2020) (summary order) (citations and quotations omitted). The Second Circuit has rejected "any bright-line durational requirement for a viable unsanitary-conditions claim[,]" and has instructed that a unconstitutional unsanitary conditions claim "depends on both the duration and severity of the exposure." *See Willey v. Kirkpatrick*, 801 F.3d 51, 68 (2d Cir. 2015) (reversing district court's dismissal for failure to state an Eighth Amendment conditions of confinement claim where inmate plaintiff alleged that while kept naked in a strip cell, he was exposed, at a minimum, to seven days of human waste). As the Second Circuit explained:

> Where, for example, an exposure to human waste lasts merely ten minutes, but that exposure takes the form of working in a well while facing "a shower of human excrement without protective clothing and equipment," a jury may find an Eighth Amendment violation. *See Fruit v. Norris,* 905 F.2d 1147, 1151 (8th Cir.1990). Spending three days in that well was not required to state a claim. Likewise, a less severe exposure may be constitutionally permissible if rectified in short order but may become cruel and unusual with the prolonged passage of time. *See McCord [v. Maggio],* 927 F.2d [844,] 846–47 [(2d Cir. 1991)](holding that occasional sewage backup onto cell floor on which inmate slept over two-year period, among other conditions, violated Eighth Amendment).

*Id.*

Here, Lopez has sufficiently alleged a plausible violation of his Fourteenth Amendment rights based on his assertion that mice were consistently in each cell at NHCC, and that he was subjected to mice, mold on the windows, and dirty air vents in his cell at HL-3, (where he allegedly had to create barriers to keep the mice from entering his cell). *See Gaston v. Coughlin*,

5

249 F.3d 156, 166 (2d Cir. 2001) (holding that plaintiff stated a § 1983 claim by pleading mice were constantly entering his cell and he was subjected to human feces, urine and sewage water in front of cell). He has also sufficiently alleged that he raised these issues with the defendants but they failed to take any remedial steps. Accordingly, the court will permit Lopez's claim of unsanitary conditions to proceed against Warden Black, Deputy Warden Maldonado, and Deputy Warden Denise Walker.

### B.   Official Capacity Claims

Lopez requests injunctive and declaratory relief "in the sum of $40,000 to have the conditions remedied." To the extent he seeks monetary relief against defendants, who are state employees, in their official capacities for violation of his constitutional rights, such claims are barred by the Eleventh Amendment. *See e.g., Kentucky v. Graham*, 473 U.S. 159, 169 (1985). These requests are not plausible even if the court construes these requests as seeking injunctive relief to remedy the unsanitary conditions or a declaratory judgment stating that the defendants violated Lopez's Fourteenth Amendment rights.

In *Ex parte Young*, 209 U.S. 123 (1908), the United States Supreme Court recognized a limited exception to the Eleventh Amendment's grant of sovereign immunity from suit to permit a plaintiff to sue a state official acting in an official capacity for prospective injunctive relief for continuing violations of federal law. *Id.* at 155–56; *In re Dairy Mart Convenience Stores, Inc.*, 411 F.3d 367, 371 (2d Cir. 2005). "A plaintiff may sue a state official acting in his official capacity—notwithstanding the Eleventh Amendment—for 'prospective injunctive relief' from violations of federal law." *In re Deposit Ins. Agency*, 482 F.3d 612, 617 (2d Cir. 2007).

However, this exception to Eleventh Amendment immunity "does not permit judgments against state officers declaring that they violated federal law in the past." *See P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy*, 506 U.S. 139, 146 (1993).

Thus, the court will dismiss any request for a declaration that the defendants have violated Lopez's in the past. *See Green v. Mansour*, 474 U.S. 64, 68 (1985) ("We have refused to extend the reasoning of *Young* . . . to claims for retrospective relief.").

To the extent that Lopez seeks injunctive relief, this request is moot because, as the docket in this case reflects, he is no longer incarcerated within the DOC. *See* Notice of Change of Address (ECF No. 16); *Khalil v. Laird*, 353 F. App'x. 620, 621 (2d Cir. 2009) (summary order) ("When Khalil was released from prison, he no longer had a "continuing personal stake" in the outcome of this action, and his claims were rendered moot.).

## IV.     ORDERS

The Court enters the following orders:

(1) The case shall proceed on Lopez's Fourteenth Amendment claims against Warden Black, Deputy Warden Madonado, and Deputy Warden Denise Walker in their individual capacities for damages. However, the Court DISMISSES his official capacity claims against the defendants.

(2) The clerk shall verify the current work address of Warden Black, Deputy Warden Madonado, and Deputy Warden Denise Walker with the DOC Office of Legal Affairs, mail a waiver of service of process request packet containing the amended complaint (ECF No. 12) to them at their confirmed addresses within **twenty-one (21) days** of this Order, and report on the status of the waiver request on the **thirty-fifth (35th) day** after mailing. If the defendants fail to return the waiver request, the clerk shall make arrangements for in-person individual capacity

service by the U.S. Marshals Service on that defendant, and that defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(3) The clerk shall send a courtesy copy of the amended complaint and this Order to the DOC Office of Legal Affairs.

(4) The defendants shall file a response to the amended complaint, either an answer or motion to dismiss, within **sixty (60) days** from the date the notice of lawsuit and waiver of service of summons forms are mailed to them. If the defendants choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claims recited above. The defendants may also include any and all additional defenses permitted by the Federal Rules.

(5) Discovery, according to Federal Rules of Civil Procedure 26-37, shall be completed within **six months (180 days)** from the date of this Order. Discovery requests need not be filed with the Court.

(6) The parties must comply with the District of Connecticut "Standing Order Re: Initial Discovery Disclosures," which will be sent to both parties by the Court. The Order can also be found at http://ctd.uscourts.gov/administrative-standing-orders.

(7) All motions for summary judgment shall be filed within **seven months (210 days)** from the date of this Order.

(8) According to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within **twenty-one (21) days** of the date the motion was filed. If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(9) If the plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that he MUST notify the Court. Failure to do so can result in the dismissal of the case. The plaintiff must give notice of a new address even if he is incarcerated.

He should write "PLEASE NOTE MY NEW ADDRESS" on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If the plaintiff has more than one pending case, he should indicate all of the case numbers in the notification of change of address. He should also notify the defendants or defense counsel of his new address.

(10) The plaintiff shall utilize the Prisoner Efiling Program when filing documents with the court. The plaintiff is advised that the Program may be used only to file documents with the court. Local court rules provide that discovery requests are not filed with the court. D. Conn. L. Civ. R. 5(f). Therefore, discovery requests must be served on defendants' counsel by regular mail.

_____/s/_____
Michael P. Shea
United States District Judge

**SO ORDERED** this 30th day of December 2020, at Hartford, Connecticut.